FILED
2011 Sep-30  AM 09:16
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **COLONY INSURANCE CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-08-S-727-NE** |
| | ) | |
| **DANNY CARTER,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Colony Insurance Company ("Colony"), originally filed this action

on April 28, 2008, seeking a declaratory judgment that Commercial General Liability

Policy No. GL3212053 ("the Policy"), which Colony issued to defendant Graham

Logging, Inc., did not provide coverage for the claims asserted by defendants Danny

and Sonya Carter against defendants Graham Logging, Inc., Steve A. Graham, Larry

Graham, and Jimmy J. Graham, in an underlying lawsuit pending in the Circuit Court

of Morgan County, Alabama.[1]  This court issued a memorandum opinion and order

---

[1] *See* doc. no. 1 (Complaint for Declaratory Judgment); doc. no. 25 (First Amended Complaint for Declaratory Judgment); doc. no. 28 (Second Amended Complaint for Declaratory Judgment); doc. no. 32 (Third Amended Complaint for Declaratory Judgment); doc. no. 53 (Fourth Amended Complaint for Declaratory Judgment).  Federal jurisdiction is based upon 28 U.S.C. §§ 1332 and 2201.  The requirements of § 1332, the diversity statute, are satisfied because plaintiff is a Virginia corporation with its principal place of business in the State of Virginia, all defendants are Alabama residents, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a)(1).  Furthermore, § 2201 provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking

on October 13, 2009, entering judgment in Colony's favor and finding that the policy did not provide coverage for any of the claims asserted in the Carters' Fourth Amended State Court Complaint, which was the most recent complaint on file with the state court at the time of this court's October 13, 2009 judgment.[2]

On February 26, 2010, plaintiff filed a motion to reopen this case because the Carters had filed a Fifth Amended Complaint in the state court case — an amendment that, for the first time, asserted claims against Steve A. Graham, Larry Graham, and Jimmy J. Graham in their capacities as executive officers or directors of Graham Logging, Inc.[3] The nature of the Carters' new state court claims is important because the primary reason for this court's October 13, 2009 judgment in plaintiff's favor was that the policy did not provide coverage for the claims asserted in the Carters' Fourth Amended State Court Complaint against Steve A. Graham, Larry Graham, and Jimmy J. Graham in their capacities *as "co-employees."*[4]

On March 22, 2010, this court granted plaintiff's motion to reopen the case,

such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

[2] *See* doc. no. 47 (Memorandum Opinion); doc. no. 48 (Order).

[3] Doc. no. 49.

[4] *See* doc. no. 47, at 13-18. Additionally, this court granted plaintiff's motion to withdraw its motion for summary judgment as to Count One of the Fourth Amended State Court Complaint, and dismissed as moot that aspect of plaintiff's declaratory judgment complaint that sought a declaration of no coverage for the claims asserted in Count One of the Fourth Amended State Court Complaint. Doc. no. 48, at 1.

rescinded the October 13, 2009 judgment, and directed plaintiff to file another amended complaint.[5]  Plaintiff complied, filing a Fourth Amended Complaint on April 1, 2010.[6]  Plaintiff's Fourth Amended Complaint in this case asserts that the Policy does not provide coverage for the claims asserted in the Carters' Fifth Amended State Court Complaint.

The only defendants who answered plaintiff's Fourth Amended Complaint were Danny and Sonya Carter.[7]  Consequently, the Clerk of Court entered the default of defendants Graham Logging, Inc., Steve A. Graham, Larry Graham, and Jimmy J. Graham on the record of this case on September 8, 2010.[8]  Plaintiff also moved for entry of default judgment against those defendants for the claims asserted in its Fourth Amended Complaint.[9]  Plaintiff and the Carters conducted discovery on the new claims asserted in plaintiff's Fourth Amended Complaint,[10] and both parties now have filed motions for summary judgment on all of those claims.[11]  This opinion will address plaintiff's motion for default judgment, as well as the parties' cross-motions

---

[5] Doc. no. 52.

[6] Doc. no. 53.

[7] *See* doc. no. 55 (Answer to Fourth Amended Complaint).

[8] Doc. no. 65.

[9] Doc. no. 69.

[10] *See* doc. no. 57 (stating that further discovery on plaintiff's new claims would be necessary); doc. no. 58 (Amended Scheduling Order).

[11] Doc. no. 66 (Motion for Summary Judgment by Defendants Danny and Sonya Carter); doc. no. 75 (Plaintiff's Second Motion for Summary Judgment).

for summary judgment.

## I.  SUMMARY JUDGMENT STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law

> dictate the materiality of a disputed fact. A genuine issue of material
> fact does not exist unless there is sufficient evidence favoring the
> nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986) (asking

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law").

> "Cross motions for summary judgment do not change the
> standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the
> Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007).
> "'Cross motions for summary judgment are to be treated separately; the
> denial of one does not require the grant of another.'" *Christian Heritage
> Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030
> (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431,
> 433 (10th Cir. 1979)). "Even where the parties file cross motions
> pursuant to Rule 56, summary judgment is inappropriate if disputes
> remain as to material facts." *Id.*; *accord Monumental Paving &
> Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.,* 176 F.3d 794, 797 (4th Cir.
> 1999) ("When considering motions from both parties for summary
> judgment, the court applies the same standard of review and so may not
> resolve genuine issues of material fact. Instead, [the court must]
> consider and rule upon each party's motion separately and determine
> whether summary judgment is appropriate as to each under the Rule 56
> standard.") (citations omitted).

*Ernie Haire Ford, Inc. v. Universal Underwriters Insurance Co.*, 541 F. Supp. 2d

1295, 1297-98 (M.D. Fla. 2008). *See also American Bankers Ins. Group v. United

States*, 408 F.3d 1328, 1331 (11th Cir. 2005) ("This court reviews the district court's

disposition of cross-motions for summary judgment de novo, applying the same legal

standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party.").

## II. STATEMENT OF FACTS

Most of the relevant facts are not in dispute.

### A.   The Policy

On May 4, 2004, Colony Insurance Company ("Colony") issued Policy No. GL3212053 ("the Policy") to Graham Logging, Inc.[12]   The Policy had a coverage period from April 7, 2004 to April 7, 2005, and it included Commercial General Liability Coverage and Commercial Property Coverage.[13]   The Policy provided the following coverage for bodily injury and property damage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.   We will have the right and duty to defend the insured against any "suit" seeking those damages.   However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[14]

Certain exclusions to coverage applied, as follows:

---

[12] *See* doc. no. 35 (plaintiff's evidentiary submission in support of its original motion for summary judgment), Exhibit 1 (Affidavit of Linda Hinckle), at Exhibit A (Copy of Policy No. GL3212053).

[13] *Id.* at page 1.

[14] *Id.* at page 26, § I(1)(a).

-6-

This insurance does not apply to:

**a.      Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.      Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)     That the insured would have in the absence of the contract or agreement; or

(2)     Assumed in a contract or agreement that is an "insured contract,"[15] provided the "bodily injury" or property

---

[15] An "insured contract" is

a.      A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.      A sidetrack agreement;

c.      Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.      An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.      An elevator maintenance agreement.

*Id.* at page 42 (Endorsement CG 21 39 10 93).

damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . . .

### d.    Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.[16]

Coverage under the Policy also did not apply to:

### e.    Employer's Liability

"Bodily injury" to:

(1)    An "employee" or "temporary worker" of any insured arising out of and in the course of:

(a)    Employment by any insured; or

(b)    Performing duties related to the conduct of any

---

[16] *Id.* at page 27, §§ I(2)(a), (b) & (d).

insured's business; or

(2)     A fellow "employee" or "temporary worker" of any insured arising out of and in the course of such employment when the insured is an "executive officer" of such employer; or

(3)     The spouse, child, parent, brother or sister of that "employee" or "temporary worker" as a consequence of Paragraph (1) above.

This exclusion applies:

(1)     Whether an insured may be liable as an employer or in any other capacity;

(2)     To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(3)     To any liability assumed under any contract or agreement.[17]

A "temporary worker" was defined as

any person who is:

a.     furnished to you to substitute for a permanent "employee";

b.     a short-term worker; or

c.     not an "employee" or volunteer worker."[18]

The Policy also provided the following coverage for medical expenses:

We will pay medical expenses as described below for "bodily injury" caused by an accident:

---

[17] *Id.* at page 15 (Endorsement U008CP-0702) (modifying Section I, Coverages, Coverage A, Bodily Injury And Property Damage Liability, § 2(e)).

[18] *Id.* at page 16.

(1)     On premises you own or rent;

(2)     On ways next to premises you own or rent; or

(3)     Because of your operations;

provided that:

(1)     The accident takes place in the "coverage" territory and during the policy period;

(2)     The expenses are incurred and reported to us within one year of the date of the accident; and

(3)     The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.[19]

However, Colony

will not pay expenses for "bodily injury":

**a.     Any Insured**

To any insured, except "volunteer workers."

**b.     Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

. . . .

**d.     Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if

---

[19] *Id.* at page 32 (COVERAGE C MEDICAL PAYMENTS, § 1(a)).

benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.[20]

The Policy also contained the following pertinent provisions with regard to who was considered to be an insured under the Policy:

**SECTION II – WHO IS AN INSURED**

1.      If you are designated in the Declarations as:

        . . . .

        d.      An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

        . . . .

2.      Each of the following is also an insured:

        a.      Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

                (1)      "Bodily injury" or "personal and advertising injury":

---

[20] *Id.* at page 32 (COVERAGE C MEDICAL PAYMENTS, §§ 2(a), (b), & (d)).

       (a)     To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business; [or]

       (b)     To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above[.][21]

## B.    The Fifth Amended State Court Complaint

Defendants Danny Carter and Sonya Carter, a husband and wife, reside in Cullman County, Alabama.  They are the plaintiffs in the civil action *Carter v. Graham Logging, Inc.,* No. CV06-619, currently pending in the Circuit Court of Morgan County, Alabama (the "state court case").[22]  The Carters named the following defendants in the state court case: Graham Logging, Inc.; Steve A. Graham; Larry Graham; and Jimmy J. Graham.  The Carters' Fifth Amended State Court Complaint states four causes of action, all of which arise out of injuries Danny Carter allegedly received on August 16, 2004, while acting within the line and scope of his

---

[21] *Id.* at page 34, §§ 1(d), 2(a) & (b).

[22] Doc. no. 53 (Fourth Amended Complaint), at Exhibit 2 (Plaintiffs' Fifth Amendment to the Complaint in *Carter v. Graham Logging, Inc.,* Civil Action No. CV06-619 in the Circuit Court of Morgan County, Alabama) (otherwise referred to as the "Fifth Amended State Court Complaint").

employment with Graham Logging.

In Count One (a claim against Steve A. Graham, Larry Graham, and Jimmy J. Graham, for negligence, wantonness, and/or willfulness) the Carters allege the following:

4.    On or about August 16, 2004, plaintiff Danny Carter operated a skidder in Morgan County, Alabama owned by defendant Graham Logging, Inc.

5.    Plaintiffs allege that Steve A. Graham, Larry Graham, and Jimmy J. Graham, in their capacity as executive officers or directors of Graham Logging, Inc., had the responsibility and duty to provide plaintiff Danny Carter with safe tools, safe equipment and safe machinery.

6.    Plaintiffs allege that defendants Steve A. Graham, Larry Graham and Jimmy J. Graham knew that the skidder which plaintiff was operating was not in a safe and operable condition. Defendants Steve A. Graham, Larry Graham and Jimmy J. Graham required plaintiff Danny Carter to operate said machine, with knowledge that working with and operating the skidder was unsafe and that plaintiff Danny Carter was at great risk of injury if allowed to operate the skidder.

7.    Defendants Steve A. Graham, Larry Graham, and Jimmy J. Graham negligently, wantonly and/or willfully failed to provide safe tools, equipment and machinery and failed to install and/or maintain and/or repair safety devices on the skidder which plaintiff Danny Carter was operating namely:

(a)    The parking brake
(b)    Rubber seal for fuel cap
(c)    Winch cable
(d)    Fire extinguisher
(e)    Battery security brackets.

8.    Plaintiffs allege that defendants Steve A. Graham, Larry Graham and Jimmy J. Graham negligently, wantonly, willfully, intentionally or wrongfully caused and/or allowed the safety devices to be removed from the skidder (including the removal and/or failure to provide a fire extinguisher for said skidder as well as the failure to replace and repair the safety devices on the John Deere Skidder).

9.    Defendants Steve A. Graham, Larry Graham and Jimmy J. Graham breached their duty owed to Danny Carter, thus proximately causing Carter's injuries.

10.    As a proximate cause and result of defendants Steve A. Graham, Larry Graham and Jimmy J. Graham's conduct, plaintiff Danny Carter was severely burned and permanently injured to his body as a whole when the skidder overturned and caught fire.

WHEREFORE, the plaintiffs claim that defendants Steve A. Graham, Larry Graham and Jimmy J. Graham are jointly, separately, and severally liable as a result of the combining and concurring wrongful conduct.  The plaintiffs request compensatory and punitive damages as allowed under Alabama law in an amount to be determined by a jury.[23]

In Count Two (a claim against Graham Logging, Inc., for the negligence and/or

wantonness of its agents Steve A. Graham, Larry Graham, and Jimmy Graham), the

Carters allege:

12.    On August 16, 2004, Danny Carter was an independent contractor to Graham Logging, Inc. and working on a job site for Graham Logging, Inc.  Graham Logging, Inc. had a duty to provide Danny Carter with safe equipment, a safe work site, training and supervision.

13.    Defendants Steve A. Graham, Larry Graham and Jimmy Graham, in their capacity as executive officers or directors of Graham

---

[23] Fifth Amended State Court Complaint, at ¶¶ 4-10.

Logging, Inc. and Graham Logging, Inc. negligently and/or wantonly failed to provide a safe work site, failed to provide safe equipment, failed to adequately train Danny Carter and failed to adequately supervise Danny Carter, thus resulting in Danny Carter's injury on August 16, 2004 when a John Deere skidder overturned and caught fire.

14.    As a proximate result of defendants' breach of duty, plaintiff Danny Carter sustained serious bodily injury requiring hospitalization, surgery and resulting permanent injuries.[24]

In Count Three (a breach of contract/ third-party beneficiary claim against

Graham Logging, Inc.), the Carters allege:

16.    Prior to August 16, 2004, defendant Graham Logging, Inc. entered into a written and oral contract with International Paper Company to cut timber on a tract of land on Brewer Mountain in Morgan County, Alabama. The contract required Graham Logging, Inc. to provide safety training, safe equipment and a safe work site for workers on the job site.

17.    Defendant Graham Logging, Inc. failed to provide any safety training, failed to provide safe operating equipment and a safe work site.

18.    The equipment and work site on the Brewer Mountain project were unsafe.

19.    Plaintiff Danny Carter was a third-party beneficiary to the contract and was injured and damaged as a direct result of the breach of the contractual agreement.[25]

In Count Four (a loss of consortium claim by Sonya Carter against all

---

[24] *Id.* at ¶¶ 12-14.

[25] *Id.* at ¶¶ 16-19.

defendants), plaintiff Sonya Carter claims that all of the Graham defendants "caused or contributed to cause the severe burns and permanent injuries to her husband. The actions committed by defendants Graham Logging, Inc., Steve A. Graham, Larry Graham and Jimmy J. Graham caused plaintiff Sonya Carter to lose the services and consortium of her husband."[26] For all of their claims, the Carters seek compensatory and punitive damages in an unspecified amount.[27]

On July 22, 2011, upon this court's request, Colony and the Carters filed a joint report on the status of the underlying state court litigation.[28] According to the status report, the only activity in the state court case has centered around the filing of the Fifth Amended State Court Complaint on October 25, 2009.[29] On November 17, 2009, Graham Logging filed a motion to dismiss the Fifth Amended State Court Complaint. In support of that motion, Graham Logging argued that Danny Carter's acceptance of workers' compensation benefits in exchange for the dismissal of Count One of the Fourth Amended State Court Complaint barred the Carters from asserting additional claims for damages arising out of the same injuries that led to the workers' compensation claim. Graham Logging also argued that, after accepting workers'

---

[26] *Id.* at ¶ 21.

[27] *See id.*

[28] Doc. no. 85.

[29] *See id.* at ¶ 3 and Exhibit 2.

compensation benefits because of Danny Carter's status as an *employee* of Graham

Logging, the Carters cannot now claim they are entitled to damages on an

*independent contractor* theory.

> Danny and Sonya Carter brought a workers compensation claim,
> accepted benefits both before and during this litigation including both
> lost wages and payment of medical expenses, and then accepted another
> $150,000 from Graham Logging, Inc. in exchange for final dismissal of
> the workers compensation claim raised in Count One of their Complaint(s).  The
> Carters knowingly accepted those benefits as "employee" of Graham Logging, Inc.
> They are now estopped, <u>as a matter of law</u>, from bringing new and different claims
> under the mantle "independent contractor" . . . .[30]

Also on November 17, 2009, the individual defendants Steve Graham, Larry

Graham and Jimmy Graham moved to dismiss the claims asserted against them in the

Fifth Amended State Court Complaint.  The basis for that motion was that this court

had found that there was no insurance coverage for the claims asserted against Steve

Graham, Larry Graham, and Jimmy Graham in the Fourth Amended State Court

Complaint.[31]

On December 29, 2009, the Carters filed a response to both motions to dismiss

filed against them in the state court case.  The Carters argued that they should be

---

[30] Doc. no. 49, Exhibit 2, at ¶ 9 (emphasis in original).

[31] Doc. no. 85, at Exhibit 3.  The state court apparently had advised the parties in its case that if this court found no coverage for the co-employee claims asserted against the individual Graham defendants, then all claims against those defendants would be dismissed.  *Id.* at 1.  This court can only surmise that the state court did so because the individual Graham defendants had filed for Chapter 7 bankruptcy protection, and the Carters had been granted permission by the Bankruptcy Court to pursue this litigation to the extent of any available insurance proceeds.

allowed to assert the new theory that the individual Graham defendants are liable as "executive officers or directors."  They also argued that Danny Carter was an independent contractor, not an employee, with Graham Logging, and that his acceptance of payments in exchange for dismissing his workers' compensation claim did not bar him from asserting additional claims against any of the defendants.[32]

On February 22, 2010, Graham Logging also filed, in state court, a motion to strike the Carters' Fifth Amended State Court Complaint.  That motion was based partially on the same grounds as Graham Logging's motion to dismiss (*i.e.,* Danny Carter's alleged inability to seek another remedy after accepting workers' compensation benefits, and his alleged inability to claim that he was an independent contractor).[33]

On February 23, 2010, the state court entered an order denying both motions to dismiss, denying Graham Logging's motion to strike the Carters' Fifth Amended State Court Complaint, and granting the Carters' motion for leave to file the Fifth Amended State Court Complaint.[34]

Other than that activity, the state court case has been stayed since April 7, 2008, pending the outcome of this litigation.  The parties in the state court case have

---

[32] Doc. no. 85, at Exhibit 4.

[33] Doc. no. 49, at Exhibit 4.

[34] Doc. no. 85, at Exhibit 1.

no pending deadlines, and they do not expect to receive a trial setting until this declaratory judgment case is resolved.[35]  Furthermore, the issue of Danny Carter's status as a third-party beneficiary to the contract between Graham Logging, Inc. and International Paper Co. has not been substantively addressed in the state court case.[36]

## C.    Additional Agreed Facts

The parties have agreed to the following additional facts by not disputing them in the summary judgment briefs.[37]

Danny Carter sustained burns to twenty-five percent of his body on August 16, 2004, when a John Deere logging skidder owned by Graham Logging overturned and caught fire.  On that date, Danny Carter was not a leased employee, a volunteer, a temporary labor service worker, or a seasonal worker.  At the end of calendar year 2004, Danny Carter received a Form 1099 Independent Contractor tax record from Graham Logging.[38]

Count One of the Carters' Fourth Amended State Court Complaint asserted a claim by Danny Carter, against Graham Logging, for workers' compensation benefits

---

[35] Doc. no. 85, at ¶ 1.

[36] *Id.* at ¶ 4.

[37] *See* doc. no. 20 (Uniform Initial Order), at 16-18 (stating that all material facts set forth in summary judgment briefs will be deemed admitted unless controverted by the opposing party).

[38] Doc. no. 66 (Carters' evidentiary submission), Exhibit 1 (Affidavit of Danny Carter), at 1-2.

arising out of his burn injuries.[39]  Danny Carter and Graham Logging settled the workers' compensation claim on August 13, 2009, for $150,000 plus Graham Logging's promise to pay Danny Carter's future medical expenses.[40]   In the "Settlement Agreement and Joint Petition for Court Approval of Settlement" filed in the state court case, Danny Carter and Graham Logging stated that on August 16, 2004 (the date of his injuries), Danny Carter was "an independent contractor laborer."[41]  Graham Logging denied and disputed that Danny Carter was its employee on August 16, 2004.[42]  The workers' compensation settlement was approved by the Circuit Court of Morgan County, Alabama, on August 13, 2009.[43]  In addition to the amount specified in the settlement agreement, Danny Carter received temporary total disability payments under Alabama's Workers' Compensation statute from Graham Logging's workers' compensation insurance carrier.[44]

Steve A. Graham, Larry Graham, and Jimmy J. Graham all have filed for individual bankruptcy protection in the United States Bankruptcy Court for the

---

[39] *See* doc. no. 45 (supplemental evidentiary submission by defendants Danny and Sony Carter), Exhibit 2 (Fourth Amendment to the Complaint in *Carter v. Graham Logging, Inc.*, Civil Action No. CV06-619 in the Circuit Court of Morgan County, Alabama), at Count One.

[40] Doc. no. 66 (Carters' evidentiary submission), Exhibit 4 ("Settlement Agreement and Joint Petition for Court Approval of Settlement"), at ¶¶ 7-8.

[41] *Id.* at ¶ 3.

[42] *Id.* at ¶ 9.

[43] *Id.* at 4 (order approving settlement).

[44] *See* doc. no. 79 (plaintiff's evidentiary materials in opposition to the Carters' motion for summary judgment), at Exhibit 1.

Northern District of Alabama.  The Bankruptcy Court allowed the Carters relief from the automatic stay imposed by 11 U.S.C. § 362, in order to pursue their claims against the Grahams in the state court case, "to the extent of available liability insurance coverage."[45]  Each of the individual Graham defendants has now received a discharge in bankruptcy.[46]

On July 28, 2004, Graham Logging entered into a contract with International Paper Company to cut, convert, and transport timber in Morgan County, Alabama. It was in furtherance of that contract that Danny Carter performed work for Graham Logging.  One provision of the contract provided:

> **11.    Compliance with Laws, Rules, and Regulations:**
> CONTRACTOR [*i.e.,* Graham Logging] covenants and agrees to secure and keep in effect all necessary licenses and permits incident to its operations in the performance of this Agreement.  CONTRACTOR warrants that all timber cut and delivered to IP [*i.e.,* International Paper] under this Agreement was produced and harvested in compliance with all applicable local, state and federal laws, rules and regulations, including, but not limited to, the Occupational Safety and Health Act, the Fair Labor Standards Act of 1938, including sections 6, 7, 11, and 12 and regulations/orders issued under section 14, the requirements of the United States Department of Labor, and the applicable provisions of Executive Order 11246, the Federal Insurance Contributions Act, the Internal Revenue Code of 1954, the Agricultural Worker Protection Standards, the Endangered Species Act, the Clean Water Act; and all applicable amendments to such laws and revisions thereof.  Upon receipt, CONTRACTOR will furnish IP with evidence, satisfactory to

---

[45]*See* doc. no. 35 (plaintiff's evidentiary submission in support of its original motion for summary judgment), at Exhibits 3-5.

[46]*Id.* at Exhibits 6-8.

IP, of compliance with all such laws, rules and regulations.[47]

## III.  DISCUSSION

**A.    Plaintiff's Motion for Default Judgment**

Defendants Graham Logging, Inc., Steve A. Graham, Larry Graham, and Jimmy J. Graham did not answer or otherwise respond to plaintiff's Fourth Amended Complaint for Declaratory Judgment.  Accordingly, the Clerk of Court entered the default of those defendants on the record on September 8, 2010.[48]  Based on the Clerk's entry of default, plaintiff moved the court to "enter a default judgment for the declaratory relief requested against" Graham Logging, Inc., Steve A. Graham, Larry Graham, and Jimmy J. Graham.[49]  No party filed a response or otherwise objected to the motion for default judgment, despite being given the opportunity to do so by the court.[50]

Based on these facts, this court concludes that default judgment is due to be entered against defendants Graham Logging, Inc., Steve A. Graham, Larry Graham, and Jimmy J. Graham.  This does not mean, however, that this court must enter a judgment that there is no coverage under the Policy for the claims asserted by the

---

[47] Doc. no. 79, Exhibit 2, unnumbered page 19, at ¶ 11.

[48] Doc. no. 65.

[49] Doc. no. 69, at 1.

[50] *See* text order entered on September 14, 2010 (directing any party wishing to file a response to the motion for default judgment to do so on or before September 24, 2010).

Carters against those defendants in the state court case. *See Nishimatsu Construction Co. v. Houston National Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").[51]  To do so would bring about the absurd result of allowing the failure of the Grahams and their business to participate in this litigation to unfairly prejudice the Carters and unduly benefit Colony.  The Carters have clearly and consistently taken the position that there is coverage under the Policy for the claims they asserted against the Graham defendants in the state court case, presumably because the Carters have a greater expectation of collecting a judgment out of the Policy proceeds than directly from the Graham defendants themselves.  The Carters should not be forced to accept an unfavorable judgment merely because the Graham defendants have chosen not to participate in this litigation.

Accordingly, this court will enter default judgment against defendants Graham Logging, Steve A. Graham, Larry Graham, and Jimmy J. Graham, due to their failure to answer or otherwise respond to plaintiff's Fourth Amended Complaint for Declaratory Judgment.  The effect of the default judgment will be that those

---

[51] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

defendants are prohibited from any future efforts to assert a defense in this litigation. Whatever judgment is entered on the claims asserted by Colony against the Carters also will apply to the Graham defendants.

## B. Discussion of the Parties' Cross-Motions for Summary Judgment

As all the claims in the Carters' Fifth Amended State Court Complaint now are asserted against Steve A. Graham, Larry Graham, and Jimmy J. Graham *as executive officers or directors of Graham Logging,* and not as co-employees, there can be no reasonable dispute that those defendants are "insureds" under the Policy. The Policy states that "'executive officers' and directors are insureds," at least with respect to their duties as officers or directors.[52] Even so, the parties still dispute whether there is coverage under the Policy for the four claims asserted in the Fifth Amended State Court Complaint.

Two of Colony's arguments can be easily dispensed with. First, Colony asserts that, to the extent the Carters are relying upon any willful or intentional conduct to support the claim asserted in Count Two of the Fifth Amended State Court Complaint, that claim would be barred by the Policy exclusion for injuries "expected or intended from the standpoint of the insured."[53] In response, the Carters admit that there are no claims for intentional acts in their Fifth Amended State Court

---

[52] *See* Policy provisions accompanying note 21, *supra.*

[53] *See* Policy provisions accompanying note 16, *supra.*

Complaint,[54] so there is no need for further discussion of Colony's first argument. Second, Colony asserts that Danny Carter was a "temporary worker," and that all of his claims therefore are excluded from coverage under the Policy exclusions for injuries suffered by "temporary workers."[55]   However, Colony offered no evidence to support that assertion, and the bare assertion in a brief that Danny Carter was a temporary worker is insufficient to contradict Carter's sworn statement in his affidavit that he was *not* a temporary worker.

Those issues aside, the Carters apparently are willing to acknowledge that there would be no coverage under the Policy if Danny Carter had been an "employee" of Graham Logging, and rightfully so, because the Policy specifically excludes coverage for "bodily injury" to any "employee" arising out of, or relating to, his employment with an insured.[56]   To avoid that problem, the Carters argue that Danny Carter was an independent contractor, not an employee.   There is some evidence to support that argument, or, at least, to support the proposition that Graham Logging held Carter out to be an independent contractor.[57]   For example, Graham Logging sent Carter a Form

---

[54] Doc. no. 82 (Carters' Response to Plaintiff's Motion for Summary Judgment), at 2 ("Carter never pled intentional act claims under the Alabama Workers' Compensation Act in his Fifth Amended Complaint.").

[55] *See* Policy provisions accompanying note 17, *supra.*

[56] *See* Policy provisions accompanying note 17, *supra.*

[57] As none of the Graham defendants have presented any evidence in this case, the only evidence before the court regarding Danny Carter's status as an employee or independent contractor was submitted by either the Carters or by Colony.

1099 Independent Contractor for the 2004 tax year.  Also, in the "Settlement Agreement and Joint Petition for Court Approval of Settlement" filed in state court, Danny Carter and Graham Logging stipulated that Mr. Carter was an independent contractor on the date of his injury.

Additionally, the Carters assert that, if there is coverage for the claims asserted in Counts One and Two because Danny Carter was an independent contractor, then there also is coverage for the derivative claim for loss of consortium asserted by Sonya Carter in Count Four of the Fifth Amended State Court Complaint.

Colony asserts several arguments in response.  First, Colony asserts that the Carters should be estopped from arguing that Danny Carter was an independent contractor, because he accepted a settlement payment for the workers' compensation claim asserted in Count One of his Fourth Amended State Court Complaint, a claim that would only be available to an "employee," not to an "independent contractor." According to Colony, Danny Carter elected his remedy by accepting the workers' compensation settlement, and he therefore is barred from pursuing any other causes of action based on the same injuries for which he received workers' compensation. *See Brown v. Hixon,* 686 So. 2d 1220, 1222 (Ala. Civ. App. 1996) ("The Alabama Supreme Court has held that 'the acceptance of compensation payments under the Workmen's Compensation Act constitutes an election that estops the employee from

resorting to any other remedy.' *Davis v. M.C. Dixon Lumber Co.*, 551 So.2d 305, 306 (Ala. 1989); *see Thompson v. Town of Killen*, 583 So.2d 1336, 1337 (Ala. 1991). Brown has accepted, and is continuing to accept, payments under the Workers' Compensation Act.   Therefore, he is estopped from bringing negligence and wantonness claims against Hixon."). Colony similarly claims that Sonya Carter is barred from asserting a derivative claim for loss of consortium based on the injuries her husband received.  *See Brown,* 686 So. 2d at 1222 ("[W]hen an employee accepts payments under the Workers' Compensation Act, a claim for loss of consortium is also barred.") (citations omitted).[58]

With regard to Count Three of the Fifth Amended State Court Complaint (a breach of contract claim based on a third-party beneficiary theory), the Carters argue that Danny Carter is entitled to damages as a third-party beneficiary of the safety requirements in the timber contract entered into by Graham Logging and International Paper Inc.  *See HRH Metals, Inc. v. Miller,* 833 So. 2d 18, 21 (Ala. 2002) (setting forth the elements required to prove a breach of contract based on a third-party beneficiary theory).  Colony disputes that Danny Carter can satisfy any of the

---

[58] Colony also argues that, to the extent Counts One and Two of the Carters' Fifth Amended State Court Complaint attempt to assert workers' compensation claims under Alabama law, such claims would be barred by the Policy exclusion for claims brought under "a workers' compensation, disability benefits or unemployment compensation law or any similar law."  *See* Policy provisions accompanying note 16, *supra.*  The court agrees with Colony that any such claim would be excluded, but the court does not construe Count One and Two as attempting to assert a workers' compensation claim.

requirements for third-party beneficiary status.

All of these arguments relate to the substance of the Carters' state court claims, not to the extent of coverage available under the Policy. Colony acknowledged as much in a footnote to its briefs, stating:

> Colony is aware that, to some extent, both sides in this case have delved into issues that relate to the merits of the claims asserted by Carter in the Underlying Litigation. In particular, whether Carter's state claims in Counts One, Two, and Four are barred by Alabama law or whether Carter is a third-party beneficiary to the Graham/ International Paper contract as Carter claims in Count Three seem to be issues that would ordinarily be first addressed in state court. However, the parties apparently prefer that these issues be addressed first in this Court since there has been a stay (except as to the Workers' Compensation Claim) entered in the Underlying Litigation since April 7, 2008, and no party there has sought to have the stay lifted. Colony has taken the position that claims which are barred or which otherwise fail under state law do not give rise to covered claims or alternatively, are not covered under specific provisions of Colony's Policy.[59]

This court agrees that all issues relating to the merits or substance of the Carters' underlying claims should be addressed in the first instance by the state court presiding over those claims. This court is not persuaded to deviate from that procedure because of the parties' apparent "preference" for litigating those issues here. The parties' preferences do not control this court's docket.[60] Stated differently, it is not for this

---

[59] Doc. no. 76 (Plaintiff's Brief in Support of Second Motion for Summary Judgment), at 17 n.2.; doc. no. 78 (Plaintiff's Response to the Carters' Motion for Summary Judgment), at 8 n.2.

[60] The court understands that the parties' preferences may arise from the fact that all of the individual Graham defendants filed for bankruptcy protection, and that the Carters were allowed relief from the automatic stay in order to pursue their state court claims to the extent of any available

court to decide whether Danny Carter was an independent contractor or an employee, whether he elected an exclusive remedy by accepting a workers' compensation settlement from Graham Logging's insurance carrier, or whether Mr. Carter was a third-party beneficiary to the contract between Graham Logging and International Paper Company.

In fact, Eleventh Circuit precedent suggests that it would be *wrong* for this court to decide legal issues in a federal declaratory judgment action, when those same issues have been raised but not yet decided in a parallel state court proceeding.

> The duty to indemnify, or provide coverage to, an insured party is triggered only when the insured is determined to be liable for damages within the policy's coverage. As a result, the Eleventh Circuit has "cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of the apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured." *Edwards* [*v. Sharkey*], 747 F.2d [684, 686 (11th Cir. 1984)] (citing *American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Co.*, 280 F.2d 453 (5th Cir. 1960)). District courts within this circuit have consistently heeded this admonition and declined to declare insurers' indemnity obligations absent a liability determination in the underlying case. *See Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1211 n. 10 (S.D. Ala. 2005) (collecting cases); *Great N. Paper Co. v. Babcock & Wilcox Co.*, 46 F.R.D. 67, 70 (N.D. Ga. 1968) ("The court should not

---

insurance coverage. Therefore, the Carters likely would prefer to know whether the Grahams will have insurance coverage for the claims asserted in their Fifth Amended Complaint before they expend any additional resources to litigate those claims. That would be an understandable position for the Carters to take, but it does not entitle the Carters to a trial on the merits of their state court claims in this court, especially considering that Graham Logging, Inc., which presumably is a "deeper pocket" than any of its individual owners, has not filed for bankruptcy protection.

pass on questions of insurance coverage and liability for indemnification when the contingencies giving rise to them may never occur."). Other courts have likewise found declaratory relief to be inappropriate under such circumstances. *See, e.g., Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."); *American States Ins. Co. v. Component Techs., Inc.*, 420 F. Supp. 2d 373, 374 (M.D. Pa. 2005) ("As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action.") (citations omitted). For instance, in *Century Indemnity Co. v. McGillacuty's, Inc.*, 820 F.2d 269, 270 (8th Cir. 1987), the Eighth Circuit echoed the caution advised by the Eleventh Circuit, stating that: "When an insured's liability has not yet been determined, a court should refrain from deciding which insurance company is liable for coverage, especially when coverage is admitted but they are arguing about which is the primary carrier and which is the excess carrier."

The rationale for declining to address coverage disputes before the insured's liability is established is that such a determination may be unnecessary and irrelevant and, thus, a waste of judicial resources. *Lear Corp.*, 353 F.3d at 583; *Century Indemnity Co.*, 820 F.2d at 271. In the context of this case, for example, if the personal injury case goes to trial and there is a Defendants' verdict, neither insurer will have to pay. In that case, the difficult coverage issue will never have to be decided.

*Erie Indemnity Co. v. Acuity,* No. 1:06-CV-0174-TWT, 2006 WL 2048310, *2-3

(N.D. Ga. July 12, 2006). Based on this authority, this court will decline to decide,

at this point, whether the claims asserted in the Carters' Fifth Amended State Court

Complaint are covered under the policy.[61]  Further, as issues of coverage are the only

---

[61] Although it is not appropriate to make any final decisions at this point about coverage under the Policy for the claims asserted in the Carters' Fifth Amended State Court Complaint, the court will pause to make some observations about the likely outcome of the coverage questions if

issues at stake in this lawsuit, the court concludes that the case should be dismissed, but without prejudice to Colony's right to refile a declaratory judgment action if the Carters receive a final judgment on the merits of any of the claims they asserted in the state court case. *See Employers Mutual Casualty Co. v. All Seasons Window & Door Manufacturing, Inc.,* 387 F. Supp. 2d 1205, 1212 (S.D. Ala. 2005) (choosing dismissal over a stay under similar circumstances, and noting that "under Alabama law, 'in an action seeking indemnification the limitations period does not begin to run until liability has become fixed,' [so] there is no risk that a relevant limitations period will expire pending the conclusion of the state proceedings"). The parties' cross-motions for summary judgment will be denied as moot.

---

they arise again *after* the Carters receive a final judgment in state court, and *after* Colony refiles a declaratory judgment action to determine coverage. If the state court determines that Danny Carter is an independent contractor, there likely would be no coverage under the Policy for the claims asserted in Counts One, Two, and Four of the Fifth Amended State Court Complaint. If, on the other hand, the state court determines that Danny Carter was an employee of Graham Logging, there likely would be coverage under the Policy for the claims asserted in Counts One, Two, and Four of the Fifth Amended State Court Complaint. Further, if the state court determines that Danny Carter elected an exclusive remedy by accepting workers' compensation benefits from Graham Logging's insurance carrier, that court presumably would dismiss Counts One, Two, and Four from the Fifth Amended State Court Complaint, and any question as to coverage under the Policy for those claims would be rendered moot. Similarly, if the state court determines that Danny Carter was *not* a third-party beneficiary to the timber contract entered into between Graham Logging and International Paper, Inc., the state court presumably would dismiss Count Three from the Fifth Amended State Court Complaint, and any question as to coverage under the Policy for that claim would be rendered moot. However, even if the state court determines that Danny Carter *is* entitled to damages as a third-party beneficiary of the contract between Graham Logging and International Paper, Inc., there still likely would be no coverage under the Policy for those damages, as there appears to be no evidence that the Graham Logging-International Paper contract is an "insured contract" for which coverage can be provided under the Policy. *See* definition of an "insured contract" at note 15, *supra.*

## IV. CONCLUSION AND ORDERS

In accordance with the foregoing, plaintiff's motion for default judgment against defendants Graham Logging, Inc., Steve A. Graham, Larry Graham, and Jimmy J. Graham is GRANTED, and judgment is entered by default in favor of plaintiff and against defendants Graham Logging, Inc., Steve A. Graham, Larry Graham, and Jimmy J. Graham. The effect of the default judgment shall be that Graham Logging, Inc., Steve A. Graham, Larry Graham, and Jimmy J. Graham are prohibited from any future efforts to assert a defense in this litigation, and that any further orders entered herein shall be applicable to those defendants.

The parties' cross-motions for summary judgment are both DENIED as moot. It is ORDERED that plaintiff's complaint for declaratory judgment is DISMISSED, but without prejudice to plaintiff's right to refile a declaratory judgment action once the Carters receive a final judgment on the merits of any of the claims they asserted in the state court case.

Costs are taxed as paid. The Clerk is directed to close this file.

DONE this 30th day of September, 2011.

_____
United States District Judge